UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARK HURST, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 1:18-cv-02911-TWP-MPB ) |
| WARDEN, | ) ) |
| Respondent. | ) ) |

**Order Denying Petition for a Writ of Habeas Corpus,
Denying Motion to Amend and Motion to Provide Notice,
and Directing Entry of Final Judgment**

Indiana prison inmate Mark Hurst petitions for a writ of habeas corpus challenging a prison disciplinary sanction imposed in prison disciplinary case number ISR 18-06-0020. For the reasons explained in this Order, Mr. Hurst's habeas petition must be **denied**.

**A.  Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

### B. The Disciplinary Proceeding

On June 4, 2018, Indiana Department of Correction (IDOC) Major M. Conyers wrote a Report of Conduct charging Mr. Hurst with rioting (encouraging, directing, commanding, or coercing others), a violation of the IDOC's Adult Disciplinary Code offense A-103. The Report of Conduct states:

> On 6/4/18 at 10:05 AM I, Major M. Conyers was discussing issues with offenders that were refusing to voluntarily be restrained and escorted back to their cells. After some discussion some offenders complied. As discussion continued Offender Hurst, Mark #181299 told the other offenders on the recreation pad "give them a chance go ahead and cuff up."

Dkt. 8-1.

Mr. Hurst was notified of the charge on June 8, 2018, when he received the Screening Report. Dkt. 8-3. He pled not guilty to the charge. *Id.* Mr. Hurst requested three witnesses: Counselor Arnold, Sergeant Martz, and Captain Counceller. *Id.* Mr. Hurst also requested video evidence and copies of various IDOC policies. *Id.* Mr. Hurst wrote on the screening report, "Refusing to cuff up is different from rioting, I did NOT refuse to cuff-up." *Id.*

A hearing was held on June 11, 2018. Dkt. 8-5. There was no video of the incident, therefore Mr. Hurst did not receive video evidence. *Id.* The hearing officer denied Mr. Hurst's request for prison policies as irrelevant, noting that Mr. Hurst had requested policies on the chain-of-command. *Id.* The three requested witnesses gave written statements. *Id.*

Sergeant Martz's statement was "On the above date at approx. 7:45 AM I Sgt. B. Martz gave Ofd. Hurst, Mark # 181299 the order to cuff-up & leave the G.C.H. Rec. Pad Ofd. Hurst refused this order & joined 13 other ofds. in a group demonstration protesting the running of G.C.H. Once Capt. Counceller & Major Conyers arrived on the Rec. Pad I returned inside G.C.H. to prepare for the arrival of the weapons team." Dkt. 8-8 (spelling errors corrected).

Captain H. Counceller provided two written statements. The first was that "On this date this offender was on the rec pad with other offenders refusing to come in until offender Hurst made a comment to the others, then they finally were restrained and placed in their cells." Dkt. 8-7 (spelling errors corrected). The second statement was "On 06/4/18 at 10:05am I Capt Counceller was on the GCH recreation pad talking to offenders when I heard offender Hurst tell the other offenders to go ahead and be restrained and give them a chance to fix the issues. Then all of the offenders complied with orders to be restrained." Dkt. 8-2 (spelling errors corrected).

Counselor Arnold's statement was "I spoke with Offender Hurst while he was on the Rec. Pad. Offender Hurst stated to me that they was not leaving the Rec Pad till someone other than Lt. Simone came to talk to them so they could address issues that was not being taken care of." Dkt. 8-6 (spelling errors corrected).

Mr. Hurst's statement to the hearing officer was:

> I have no choice but to say not guilty. If I personally didn't cuff up, that's refusing an order. The witness statements say I tried to diffuse the situation. I was wrong for not going in when they told me. I tried to get them to stop. My dad died and I had misplaced feelings. I think my actions were because of how I felt from my dad dying.

Dkt. 8-5.

The hearing officer considered the staff reports, witness statements, and Mr. Hurst's statement and found Mr. Hurst guilty of the charged A-103 offense of rioting. *Id.* The sanctions imposed included the loss of 365 days of earned time credits and a demotion in credit earning class. *Id.* These sanctions were imposed due to the severity of the offense and Mr. Hurst's previous history of conduct reports. *Id.*

On June 12, 2018, Mr. Hurst timely appealed to the Facility Head (Warden). Dkt. 8-9. He contended that (1) he had been denied 24-hour advance notice of the hearing; (2) he was denied a

witness; (3) he had been denied an attempt to present evidence; and (4) he was denied a continuance of the hearing. *Id.* The Warden denied the appeal on July 31, 2018. *Id.* The denial was almost three weeks late under IDOC policy, as it should have been completed within thirty days. Police and Administrative Procedures, Indiana Department of Correction, No. 02-04-101, § X.C.3. (Available at https://www.in.gov/idoc/files/02-04-101_The_Disciplinary_Code_for_Adult_ Offenders 6-1-2015.pdf (last visited July 1, 2019)).

While the facility appeal was pending, and one week after the Warden's thirty-day response period expired, on July 19, 2019, Mr. Hurst wrote to the IDOC Central Office about his disciplinary conviction. He told the Central Office that there was insufficient evidence to support the rioting charge and that his mental health played a part in the incident and should have been considered. Dkt. 8-10. This is the only attempt Mr. Hurst made to challenge the disciplinary conviction after his facility appeal. The Central Office's Legal Services Division responded to Mr. Hurst's correspondence, urging Mr. Hurst to complete a facility level appeal because it appeared that he had not yet done so. Dkt. 8-10. This office, which is also the Final Reviewing Authority for the IDOC, did not address any of the contentions in Mr. Hurst's letter. *Id.*

Mr. Hurst now brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

C. **Analysis**

1. **Incident overview.**

The disciplinary record, including witness statements, shows that on June 4, 2018, at 7:45 a.m., Mr. Hurst and thirteen other offenders were on a recreation pad in their prison facility. Mr. Hurst refused to "cuff up" and he and the other offenders would not leave the recreation pad until their complaints about certain matters at the prison were addressed. Other correctional officials were summoned. One official was told by Mr. Hurst that he and the other offenders were not

leaving the recreation pad until someone other than Lt. Simone came to discuss neglected issues with them. At 10:05 a.m., two hours and twenty minutes after the offenders refused to cuff up, Mr. Hurst was heard telling the other offenders to submit to being restrained and allow the officials to address the issues.

Mr. Hurst alleges that the other thirteen offenders were charged with engaging in a group demonstration, a B-223 violation, but he was charged with rioting.

### 2. Rioting as Defined by Offense A-103.

The A-103 rioting offense is defined by the IDOC's Adult Disciplinary Process, Appendix of Offenses, as:

> Encouraging, directing, commanding, coercing, or signaling one (1) or more other persons to participate in a disturbance to facility order caused by a group of two (2) or more offenders, or participating in such a disturbance, or remaining in a group where some members of the group are participating in such a disturbance.

Dkt. 8-12, p. 1.

### 3. Exhaustion of Administrative Remedies.

The Warden argues as a preliminary matter that Mr. Hurst did not "properly exhaust" his administrative appeals and has procedurally defaulted his claims. Dkt. 8, pp. 7-11. The Warden acknowledges Mr. Hurst pursued the facility-level appeal, and construes Mr. Hurst's letter to the IDOC Central Office as the second-level appeal. But because Mr. Hurst did not wait until the Warden had made a decision on the facility-level appeal, his second-level appeal was premature and not "proper" exhaustion. *Id.*

The Warden's response to Mr. Hurst's facility-level appeal was due, according to IDOC policy, within thirty days. When the decision was not provided by that deadline, Mr. Hurst proceeded with his second-level appeal in what could be construed as an attempt to exhaust his administrative remedies. Rather than resolve issues raised by the Warden's delay in responding to

the facility-level appeal and the IDOC Central Office's response to Mr. Hurst's attempted second-level appeal, the Court elects in the interest of judicial economy to address the merits of Mr. Hurst's grounds for relief. *See Brown v. Watters*, 599 F.3d 602, 609–10 (7th Cir. 2010) ("[T]he Supreme Court noted that its cases have 'suggest[ed] that the procedural-bar issue should ordinarily be considered first.' Nevertheless, added the Court, it did 'not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be.'" (quoting *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997)).

### 4. Grounds for Relief

#### (a) Ground One

Mr. Hurst contends that his request for evidence was denied in violation of IDOC policy. Mr. Hurst asked for copies of prison policies and a statement from the IDOC Ombudsman's office and to present those items at the disciplinary hearing. He asked to postpone the hearing to allow him time to obtain the statement, but his request was denied. Dkts. 2, pp. 3-4, & 2-1, p. 7. The hearing officer also denied Mr. Hurst's request for this evidence as irrelevant, which Mr. Hurst contends was a due process violation as well as a violation of IDOC policy.

Relief pursuant to § 2254 is available only on the ground that a prisoner "is being held in violation of federal law or the U.S. Constitution." *Caffey v. Butler*, 802 F.3d 884, 894 (7th Cir. 2015). Prison policies, regulations, or guidelines do not constitute federal law; instead, they are "primarily designed to guide correctional officials in the administration of a prison . . . not . . . to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy, such as the one at issue here, are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 Fed. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional

defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 Fed. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import – and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief.").

However, the federal constitutional due process right implicated by the violation of policy is itself a cognizable § 2254 claim. *See Keller*, 271 Fed. App'x at 532 (7th Cir. 2008). A prisoner has a due process right to present relevant evidence in his defense to the disciplinary charge. *Wolff*, 418 U.S. at 556; *Ellison*, 820 F.3d at 274. The next question in the instant action, therefore, is whether IDOC policies and a statement from the IDOC Ombudsman are relevant to Mr. Hurst's defense to the charge of rioting. If the evidence is not relevant, its denial is not a due process violation. *Scruggs*, 485 F.3d at 939-40.

The Warden argues that the IDOC Ombudsman did not witness the incident at issue, and therefore any statement or testimony from her is irrelevant. Mr. Hurst does not explain the relevance of any evidence from the Ombudsman, but submits two letters from the Ombudsman with his petition. Dkt. 2-1, pp. 15-16. The letters, dated April 26 and June 19, 2018, are addressed to Mr. Hurst and acknowledge that he wrote to the office about his A-103 conduct report. The letters then urge Mr. Hurst to complete his administrative appeals. *Id.* Neither letter contains any statement about the incident or suggests that the Ombudsman has information about the incident other than Mr. Hurst's letters. *Id.* The Court concurs with the Warden that there is no relevance to the Ombudsman's testimony or statement, and therefore Mr. Hurst did not suffer a due process violation by any denial of this material.

Mr. Hurst does not present an argument concerning his request to obtain copies of IDOC policies on the chain-of-command. *See* dkt. 8-5. The Court sees no relevance of the chain-of-command to the question of whether Mr. Hurst violated Code section A-103. There was no due process violation for declining to provide Mr. Hurst the IDOC chain-of-command policy to use at his disciplinary hearing.

Habeas corpus relief on ground one is **denied**.

### (b) Ground Two

Mr. Hurst next contends that he was denied 24-hours advance notice of the disciplinary hearing. Dkt. 2, p. 4. He also appears to be contending that because his signature is missing from a document, some other due process violation occurred. *Id.* Finally, Mr. Hurst also appears to be contending that the lack of notice in some way hindered his ability to request witnesses. *Id.*

A prisoner facing a disciplinary hearing is entitled to 24-hours advance notice of the hearing in order to prepare his defense. *Wolff*, 418 U.S. at 564. The record shows that Mr. Hurst received notice of the charge and the hearing date on June 8, 2018. Dkt. 8-3. There appears to be a signature in the form's space for "Signature of Offender." *Id.* The form also contains information about witnesses and evidence that correlates with what Mr. Hurst has pled in his petition. The Court is satisfied that the record shows Mr. Hurst received notice on June 8.

The disciplinary hearing was held on June 11, 2018. Dkt. 8-5. The hearing report does not reflect a signature for the offender, but it is clear that the hearing occurred on this date. Mr. Hurst received at least 24-hours advance notice of the hearing and therefore no due process violation occurred. As for a lack of signature on the Report of Disciplinary Hearing, there is no due process requirement that hearing reports contain the prisoner's signature. Mr. Hurst was aware of the sanctions imposed and his appeal rights, as shown by his timely facility-level appeal and the issues

raised. Any claim Mr. Hurst makes contending he was not advised of his rights, *see* dkt. 2-4, is without merit.

Finally, Mr. Hurst appears to contend that he did not have sufficient time to request or obtain witnesses for the hearing. But as noted in the preceding section, the IDOC Ombudsman's testimony and statement was not relevant to the hearing, and no due process violation occurred by not providing Mr. Hurst time to secure her appearance. The three IDOC witnesses Mr. Hurst requested each provided written statements and therefore Mr. Hurst was not denied witnesses.

Habeas corpus relief on ground two is **denied**.

### (c) Sufficiency of the Evidence

In his third ground for relief, Mr. Hurst contends that there is insufficient evidence to support the rioting charge because witness statements demonstrate that he tried to diffuse the situation, not encourage it. Dkt. 2, p. 5. He points to the witness statements reflecting that he told the other offenders to go ahead and "cuff up" and "give them a chance to fix the issues." *Id.*

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274; *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

9

A federal habeas corpus court does not reweigh the evidence or determine if lesser offenses would be more appropriate charges. Rather, the only inquiry in sufficiency of the evidence questions is whether there is some evidence to support the charged conduct. Here there is some evidence to support the hearing officer's decision. While Mr. Hurst may have tried to diffuse the situation, the record is clear that he was one of fourteen offenders refusing to cuff up and leave the recreation pad until their concerns were addressed. Dkts. 8-1, 8-2, 8-5, 8-6, 8-7, & 8-8. The offenders were in this status from at least 7:45 a.m. until 10:05 a.m., a period of over two hours. IDOC supervisory officials had to be summoned, and a weapons team was responding. *Id.* On this evidence Mr. Hurst's undisputed conduct clearly satisfies the elements of Offense A-103. At a minimum Mr. Hurst's conduct could be seen as "[e]ncouraging, directing, commanding, coercing, or signaling one (1) or more other persons to participate in a disturbance to facility order caused by a group of two (2) or more offenders . . . ." Adult Disciplinary Process, Offense A-103.

Because there is some evidence to support the hearing officer's decision, habeas corpus relief on Mr. Hurst's third ground is **denied**.

### (d)     Mr. Hurst's Mental Health Issues

In his fourth and final ground for relief, Mr. Hurst contends that IDOC policy required the disciplinary hearing officer to contact the facility mental health professional about the incident. Dkt. 2, pp. 6-7. Mr. Hurst was having trouble dealing with his father's recent passing, and believed it impacted his thought process in some way.

As shown in Section C.4(a), *supra*, the failure of prison authorities to follow their own policies does not give rise to a federal due process right. *Sandin*, 515 U.S. at 481-82. Therefore the hearing officer's failure to contact a mental health professional about Mr. Hurst prior to the hearing does not create a cognizable federal habeas corpus claim.

Habeas corpus relief on ground four is **denied**.

D.     **Motion to Amend Petition**

On June 11, 2019, almost six months after the Warden had replied to Mr. Hurst's petition, Mr. Hurst sought leave to file an amended petition. Dkt. 12. The proposed amended petition also presents four grounds for relief, including two already presented – sufficiency of the evidence and denial of evidence – but substituting two new grounds: (1) the A-103 offense as applied is unconstitutional and (2) cruel and unusual punishment. Dkt. 12-1. Mr. Hurst also filed a "motion to provide notice and certify the Petitioner's constitutional challenge." Dkt. 13.

These two new grounds for relief are not based on new evidence or changes in the law. Mr. Hurst's arguments could have been made in his original petition or in an amended petition filed before the Warden filed his return. Waiting six months after the petition has been answered to attempt an amendment presents an undue delay. The Court also finds that neither new claim has merit. It is within the Court's discretion whether to allow an amendment at this late date. *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807-08 (7th Cir. 2015).

As to the probable merits of Mr. Hurst's new claims, his argument that Offense A-103 is unconstitutional as applied for the most part simply argues the sufficiency of the evidence, an assertion that has been discussed as a ground for relief in this Order. One very brief reference in the claim contends that offense A-103 violates a prisoner's First Amendment rights. But convicted prisoners do not have unfettered free speech rights. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987); *Watkins v. Kasper*, 599 F.3d 791, 796-97 (7th Cir. 2010) (inmate law clerk's speech was unprotected where he publicly challenged supervisor's directives in a manner inconsistent with legitimate interests in discipline and prison library administration). The A-103 offense defines "rioting" as something that causes "a disturbance to facility order" or "a risk of injury to person or

property." These are legitimate penological concerns that do not unconstitutionally infringe on a prisoner's limited First Amendment rights.

Mr. Hurst's contention that his punishment is cruel and unusual is not a cognizable habeas corpus claim. It does not relate to the fact or duration of confinement, but to the conditions of confinement, and therefore cannot be raised in a cognizable habeas corpus petition. *Montgomery v. Anderson*, 262 F.3d 641, 644 (7th Cir. 2001); *Whitford v. Boglino*, 63 F.3d 527, 533 n.7 (7th Cir. 1995).

Thus it would be futile to allow the filing of Mr. Hurst's amended petition. *Gonzalez-Koeneke*, 791 F.3d at 807-08. The motion to amend the petition, dkt. [12], is **denied**. The motion to provide notice about Mr. Hurst's constitutional challenge, dkt. [13], is **denied**.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Hurst to the relief he seeks. Accordingly, Mr. Hurst's petition for a writ of habeas corpus must be **denied** and the action **dismissed with prejudice**.

Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 7/9/2019

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Mark Hurst
181299
Westville Correctional Facility
Electronic Service Participant – Court Only

Aaron T. Craft
Indiana Attorney General
aaron.craft@atg.in.gov